UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VENSON PRICE,

                                 Plaintiff,

        -against-                                     1:11-CV-0976 (LEK/RFT)

WILLIAM GIZZI; WILLIAM GIZZI, JR.;
and PAUL A. GANNON,
                                 Defendants.

—————————————————————

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

On August 18, 2011, Plaintiff Venson Price ("Plaintiff"), a resident of Schenectady County,

New York, commenced this action *pro se* in the Northern District of New York.  Dkt. No. 1

("Complaint").  Plaintiff names as Defendants William Gizzi, President of Tri-Valley Plumbing and

Heating ("Defendant Gizzi"), William P. Gizzi, Jr., Vice President of Tri-Valley Plumbing and

Heating ("Defendant Gizzi, Jr,"), and Paul A. Gannon, Foreman at Tri-Valley Plumbing and

Heating ("Defendant Gannon") (collectively "Defendants").  Id.  All Defendants are residents of

Schenectady County and Albany County, New York.  Id.  Plaintiff brings this action pursuant to 42

U.S.C. § 1983, alleging a deprivation of his civil rights.  Id.

Presently before the Court is a Motion to dismiss the Complaint for failure to state a claim

upon which relief can be granted, filed by Defendants Gizzi and Gizzi, Jr. on October 7, 2011, and a

Motion to dismiss the Complaint for failure to state a claim upon which relief can be granted, filed

by Defendant Gannon on October 26, 2011.  Dkt. Nos. 5 ("Gizzi Motion"), 8 ("Gannon Motion").

In asking the Court to dismiss Plaintiff's claims with prejudice, Defendants argue, *inter alia*, that:

(1) Plaintiff cannot bring a § 1983 suit against private citizens; (2) Plaintiff cannot bring a suit under

Title VII of the Civil Rights Act of 1964 against private individuals; (3) Plaintiff cannot sue

Defendants because they have not first been administratively charged and named in an EEOC

complaint; and (4) Plaintiff cannot amend his Complaint or add a new defendant because such an

amendment is time barred.  See generally Gizzi Mot.; Gannon Mot.; Dkt. No. 11 at 6-11.[1]

Plaintiff concurrently seeks permission for leave to amend his Complaint, making his

request first while still *pro se* in a Letter Motion filed on October 24, 2011 and later by counsel on

January 3, 2012.[2]  See Dkt. Nos. 7 ("Letter Motion") and 18 ("Cross-Motion").  Plaintiff's proposed

amendment would withdraw the claims against Defendants and would instate Tri-Valley Plumbing

and Heating ("Tri-Valley") as a Defendant in the action.  See Dkt. No. 7-1 ("Proposed amended

complaint"); Dkt. No. 27-1 ("Plaintiff's Support Memorandum II").[3]  Furthermore, Plaintiff's

Proposed amended complaint seeks to withdraw the claims of alleged violations of 42 U.S.C. §

1983 and replace them with causes of action alleging violations of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 1981, and the New York State Human Rights Law ("NYSHRL").  Dkt. No.

18-3 ("Plaintiff's Opposition Memorandum") at 7;  see also N.Y. EXEC. LAW § 290.

---

[1]  The Court notes that both Motions to dismiss raise the first two arguments (that § 1983 and Title VII do not apply to private individuals), but only Defendant Gannon's Motion raises the issue of the EEOC complaint not naming Defendant Gannon and only Defendants Gizzi and Gizzi, Jr. raise the statute of limitations issue.  Given the general similarities between the Motions, however, when possible and for the sake of clarity and brevity, the Court will address the Defendants' Motions simultaneously.

[2]  Plaintiff obtained representation on or around November 28, 2011.

[3]  While Plaintiff's initial *pro se* Motion to amend and accompanying proposed amended Complaint are not entirely clear, Plaintiff's Support Memorandum, filed by counsel, provides a more direct statement of the changes that Plaintiff wishes to make.  Where possible, the Court continues to refer to the initial Motion, but references the later Memorandum for the sake of clarifying Plaintiff's requests.

For the reasons stated below, Plaintiff's Motion to amend is granted, Defendant Gannon's

Motion to dismiss is granted and all claims against him are dismissed with prejudice, and

Defendants Gizzi and Gizzi, Jr.'s Motion is granted in part and denied in part.

## II.     BACKGROUND

Plaintiff is of African American descent.  Pl.'s Opp'n Mem. at 5.  Defendants all worked for

Plaintiff's former employer, Tri-Valley, located in Schenectady County, New York.  See Compl.

During his employment, Plaintiff was the only African American employed by Tri-Valley.  Id. ¶ 27.

Plaintiff's causes of action against Defendants stem from a series of work-related incidents that

allegedly took place between April 2007 and August 2011.  See id. ¶¶ 7-16.  Plaintiff alleges the

following: that in April 2007, his identification badge "was defaced with extreme racial prejudice"

by Defendant Gannon, who drew an "Afro" on the image, placed a label reading "BLACK ICE"

under Plaintiff's photo, and subsequently taped the badge to the steering wheel of Plaintiff's

company-supplied vehicle.  Id. ¶ 7.  Plaintiff further alleges that Defendant Gannon gained access to

the vehicle from Defendant Gizzi, Jr., the son of Tri-Valley President, Defendant Gizzi.  Id.

Plaintiff alleges that in March 2008 he "was subjected to racial intolerance and verbal abuse" by Tri-

Valley foreman, Defendant Gannon.  Id. ¶ 8.

Plaintiff further alleges that for over three years he faced constant abuse from Defendant

Gannon who "would [often] use words like 'Nigger, Coon, Porch Monkey' etc. when addressing

[him]."  Id. ¶ 18.  On one occasion Defendant Gannon said to Plaintiff with other co-workers

present, that "the only good Niggers were dead Niggers," and on another occasion while at a job,

where another African American contractor was present, Defendant Gannon criticized the

contractor's work, referred to the other contractor as Plaintiff's "dad," and stated that "all you guys

look alike." Id. at ¶¶ 18, 20 (internal quotation marks omitted).  Plaintiff also alleges that on one

occasion, Defendant Gannon, after using a portable toilet, told Plaintiff that he had "drop[ped]

[Plaintiff's] kids off at the pool." Id. ¶ 18.  Plaintiff asserts that the racial hostility became so severe

and abusive that he informed company Vice President, Defendant Gizzi, Jr., of "the intolerable

working conditions" to which he was being subjected. Id. ¶ 8.

In 2008, Defendant Gannon allegedly hung a picture of then-Senator Obama, doctored to

look like Adolf Hitler, on the company tool storage box. Id. ¶ 21.  When Plaintiff confronted

Defendant Gannon about it, informed him that he found the picture to be offensive, and said that he

thought that Senator Obama would be elected President, Defendant Gannon responded saying that

"[e]ven if he does[,] someone will kill his black ass." Id. (internal quotation marks omitted).  When

Plaintiff informed Defendant Gizzi, Jr. of the offensive photo and remarks made by Defendant

Gannon, Defendant Gizzi, Jr. responded only that "he did not care for Obama either." Id.

On November 21, 2008, Plaintiff alleges that he was publicly humiliated in front of other co-

workers at a foreman's meeting, at which both Defendants Gizzi and Gizzi, Jr. were present, by a

company commercial salesman, who described Plaintiff's work as "Nigger rigging," and Plaintiff

was subsequently belittled and mocked by those present. Id. ¶ 9.  On September 18, 2009, Plaintiff

further alleges that while performing work at Pinewood School on behalf of Tri-Valley, Defendant

Gannon "discredited work that [Plaintiff had] performed, and [Plaintiff's] ability to do work in a

public setting by stating that [Plaintiff's] work looked like 'shit' and proceed[ing] to tear it apart."

Id. ¶ 10.  Defendant Gannon then allegedly altered another picture of President Obama to show a

penis in his mouth and hung it over the job box for the purpose of angering Plaintiff. Id. ¶ 24.

When Plaintiff called Defendant Gizzi, Jr. to tell him about the incident, Defendant Gizzi, Jr. simply

told Plaintiff to "do [his] fucking job." Id.  Plaintiff, infuriated, told Defendant Gizzi, Jr. "that [he

was] not putting up with this anymore [and was] giving [him his] two week notice." Id. ¶ 25.

Plaintiff alleges that on September 21, 2009 Defendant Gizzi, Jr. specifically altered the Tri-

Valley employee handbook section regarding vacation pay, so as to avoid dispersing vacation pay

owed to Plaintiff. Id. ¶ 11.  Defendant Gizzi, Jr. also allegedly refused to return Plaintiff's personal

tools to him. Id.  Addtitionally, Defendant Gizzi allegedly filed false charges of grand larceny, for

which he provided a sworn statement, alleging that Plaintiff had unlawfully taken tools from Tri-

Valley after his discharge on October 5, 2009. Id. ¶ 14.  Plaintiff was subsequently arrested on

October 19, 2009, and these charges against Plaintiff were eventually dismissed in their entirety on

March 2, 2011. Id.  Plaintiff further alleges that Defendant Gizzi defamed him by knowingly

issuing the false sworn statement that led to his arrest, since the arrest resulted in Plaintiff's

discharge from employment at John R. Mott Inc, where he was employed at the time, and caused

Plaintiff to be disqualified from a number of other prospective employment positions. Id. ¶ 15.

On September 22, 2009, Defendant Gizzi, Jr. allegedly deducted $125.00 from Plaintiff's

pay for a saw that had not been returned to Tri-Valley. Id. ¶ 12.  Plaintiff alleges that the saw in

question was his and that it was purchased with Plaintiff's personal funds. Id.  Plaintiff further

alleges that on or around September 22, 2009, Defendant Gizzi, Jr. knowingly submitted false

documentation to the New York State Department of Labor Unemployment Insurance Appeal Board

regarding Plaintiff's termination, falsely stating that Plaintiff had left his employment with Tri-

Valley without good cause. Id. ¶ 13.  Plaintiff alleges that on September 28, 2010, he was

diagnosed with depression by his family physician. Id. ¶ 16.  The present action followed.

### III.    STANDARD OF REVIEW

### A.  Motion to Amend the Complaint

Rule 15 of the Federal Rules of Civil Procedure state that "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] . . . [but that t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  Foman v. Davis, 371 U.S. 178, 182 (1962).  Additionally, the allegations of a *pro se* litigant are to be construed under a "less stringent standard[] than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  "A *pro se* plaintiff, particularly one bringing a civil rights action, should be afforded an opportunity fairly freely to amend his complaint."  Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

Additionally, "'[t]he party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial.'"  Gorham-DiMaggio v. Countrywide Home Loans, Inc., No. 1:08-CV-019, 2009 WL 1748743, at *3 (N.D.N.Y. June 19, 2009) (quoting New York v. Panex Indus., Inc., No. 94-CV-0400, 1997 WL 128369, at *2 (W.D.N.Y. Mar.14, 1997)).  A district court is afforded broad discretionary power in granting leave to amend pleadings.  Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998).  However, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  Ruffolo v.

Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).  Where "futility is an appropriate basis for

denying leave to amend, such denial should be contemplated within the standards necessary to

withstand a motion to dismiss pursuant to [Rule 12(b)(6)]."  Gorham-DiMaggio, 2009 WL

1748743, at *3.

In order to be granted leave to amend a complaint that names a new party, Plaintiff must

name a "new party [who must] be deemed to relate back to the original timely complaint."  VKK

Corp. v. Nat'l Football League, 244 F.3d 114, 128 (2d Cir. 2001).  Further,

> [t]here are . . . three requirements that must be met before an amended complaint that names
> a new party can be deemed to relate back to the original timely complaint.  First, both
> complaints must arise out of the same conduct, transaction, or occurrence.  Second, the
> additional defendant must have been omitted from the original complaint by mistake.  Third,
> the additional defendant must not be prejudiced by the delay.

Id. (citing Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35-36 (2d Cir. 1996).  The goal of these

"relation back" principles outlined by the Second Circuit and drawn from Rule 15(c) of the Federal

Rules of Civil Procedure is "to prevent parties against whom claims are made from taking unjust

advantage of otherwise inconsequential pleading errors to sustain a limitations defense."  Advanced

Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997) (quoting FED. R. CIV. P.

15 Advisory Committee Note (1991)) (internal quotation marks omitted); see also VKK Corp., 244

F.3d at 128.

### B.  Motion to Dismiss

In order to survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a

determination "requires the reviewing court to draw on its judicial experience and common sense."

Iqbal, 556 U.S. at 679 (citation omitted).  The Court must accept as true the factual allegations

contained in the Complaint and draw all inferences in favor of Plaintiff.  See Allaire Corp. v.

Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule

12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Id.  at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard

Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the

alleged misconduct based on the pleaded facts, the pleader has not demonstrated that he or she is

entitled to relief and the action is subject to dismissal.  See Iqbal, 556 U.S. at 678-79.

## IV.    DISCUSSION

### A.  Claims Under 42 U.S.C. § 1983

Plaintiff's Complaint, brought under 42 U.S.C. § 1983, alleges deprivations of his civil

rights.  See Compl. ¶¶ 7-16.  In order to sustain a § 1983 action, the Court must determine "(1)

whether the conduct complained of was committed by a person acting under color of state law; and

(2) whether this conduct deprived a person of rights, privileges, or immunities secured by the

Constitution or laws of the United States."  Parratt v. Taylor, 451 U.S. 527, 535 (1981).  Where "a

defendant's alleged infringement of the plaintiff's constitutional rights satisfies the state-action

requirement of the Fourteenth Amendment, the defendant's conduct also constitutes action 'under

color of state law' for § 1983's purposes, since it is 'fairly attributable to the State.'"  West v.

Atkins, 487 U.S. 42, 42 (1988) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935, 937

(1982)).

All of the listed Defendants in Plaintiff's Complaint are private individuals, employed by a

private company.  Dkt. No. 5-1 ("Kimberlee Dale Marshall Affidavit") ¶¶ 4-5.  Furthermore, none

of the Defendants were "acting under color of state law," and thus, Plaintiff's claims asserted under

42 U.S.C. § 1983 must fail, since none of the listed Defendants are state actors within the meaning

of the Fourteenth Amendment of the United States Constitution.  See Polk County v. Dodson, 454

U.S. 312, 318 (1981).  Plaintiff does not dispute this finding, explaining that he "mistakenly alleged

racial discrimination in violation of 42 U.S.C. § 1983, rather than racial discrimination under Title

VII, 42 U.S.C. § 1981, and the NYSHRL."  Pl.'s Opp'n Mem. at 7.

Therefore, Plaintiff's § 1983 claims against all Defendants are dismissed with prejudice.

The only question left for the Court to consider is whether Plaintiff is entitled to amend his

Complaint.

**B.  Motion to Amend**

Plaintiff filed this instant action without the assistance of counsel, as a *pro se* litigant.  See

Compl.  Bearing in mind Plaintiff's *pro se* status at the time of filing his original Complaint and the

solicitude that this status requires of the Court, Holmes, 615 F.2d at 85, the Court assesses the

factors that might mitigate against allowing Plaintiff to amend his Complaint.  The Court may deny

leave to amend if: (1) there has been undue delay; (2) plaintiff has repeatedly failed to provide

satisfactory amendments; (3) amendment would prejudice the opposing party; (4) the amendment

would be futile.  See Forman v. Davis, 371 U.S. 178, 182 (1962).

Given that the suit was initially filed in a timely manner and that Plaintiff's first Motion to

amend immediately followed Defendants Gizzi and Gizzi, Jr.'s Motion to dismiss, the Court does

not find it necessary to address the issue of delay.  Further, previous unsatisfactory amendments

have not been presented in this case.  Therefore, the Court focuses on the other two factors

identified by the Forman Court and by Defendants Gizzi and Gizzi, Jr.: prejudice and futility.

Forman, 371 U.S. at 182.

### 1. Absence of Prejudice to Defendants

Allowing for leave to amend would not be unduly prejudicial to proposed Defendant Tri-

Valley.   Plaintiff seeks to amend his Complaint by removing Defendant Gannon, Defendant Gizzi,

and Defendant Gizzi, Jr., and substituting Tri-Valley as the sole defendant in this action.  See Pl.'s

Support Memo II at 5.  Both the President (Defendant Gizzi) and Vice President (Defendant Gizzi,

Jr.) of Tri-Valley were named as Defendants in Plaintiff's original Complaint and were thus put on

notice of a potential lawsuit that might arise against Tri-Valley, based on the same series of

allegations and facts.  Furthermore, given Defendants Gizzi and Gizzi, Jr.'s involvement with Tri-

Valley, both complaints are inextricably intertwined, as the newly listed party relates directly back

to the original Complaint.  See VKK Corp., 244 F.3d at 128.  Additionally, there is no support for

an argument that Tri-Valley was deliberately or strategically omitted from Plaintiff's Complaint.

See, e.g., VKK Corp., 244 F.3d at 128 (reversing the district court's holding, because there was

nothing to indicate that the plaintiff had engaged in a deliberate strategy by misidentifying the

proper party); Advanced Magnetics, 106 F.3d at 19.  Rather, the error in identifying the appropriate

defendant appears attributable to the fact that Plaintiff submitted his Complaint as a *pro se* litigant.

### 2. Plaintiff's Proposed Amendments do not Appear Futile[4]

#### a. Title VII Claims[5]

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ambit of Title VII is quite broad, as it covers "the entire spectrum of disparate treatment . . . in employment, . . . includ[ing] requiring people to work in a discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

A Title VII hostile workplace violation occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Id. (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).  However, the "'mere utterance of an . . . epithet which engenders offensive feelings in a employee' does not sufficiently affect the

---

[4]  The Court notes at the outset that while the parties have addressed the merits in their pleadings and Plaintiff, while still *pro se*, submitted a proposed amended Complaint, the Court addresses the merits of Plaintiff's claims only as hypothetical.  That is, Plaintiff has not actually filed an amended complaint or been granted leave to file one.  Similarly, Defendants (or proposed Defendant Tri-Valley) have not filed a motion to dismiss in response to such an amended complaint.  Therefore, the Court's analysis of the merits in not exhaustive and is conducted only to determine if amendment would be futile.

[5]  The Second Circuit and New York courts have uniformly held that "claims under the NYSHRL are analyzed identically to claims under . . . Title VII, [and] the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII."  Smith v. Xerox Corp., 196 F.3d 358, 363 (2d Cir. 1999).  Therefore, for purposes of its futility analyis, the Court will address the NYSHRL and Title VII claims jointly.  Further, because the Court has yet to grant Plaintiff's request to amend his Complaint, the Court will not address at this time Defendants Gizzi and Gizzi, Jr.'s argument that the Court should not exercise jurisdiction over Plaintiff's state law claims.

conditions of employment to implicate Title VII." Id. "There is no heightened pleading

requirement for civil rights complaints alleging racial animus . . . and this Court has found such

claims sufficiently pleaded when the complaint stated simply that plaintiffs are African-Americans,

describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for

maltreatment solely because of their color. " Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008)

(internal quotations and citation omitted) (quoting Phillip v. Univ. of Rochester, 316 F.3d 291,

298-99 (2d Cir. 2003)); see also DiPetto v. U.S. Postal Service, 383 F. App'x 102, at *1 (2d Cir. Jul.

12, 2010).

     An actionable Title VII hostile work environment claim requires the fulfillment of both an

objective and subjective test. See Harris, 510 U.S. at 21.  First, the conduct must create an

environment that, when viewed objectively, "a reasonable person would find hostile or abusive . . .

." Id.  Second, the victim must "subjectively perceive the environment to be abusive . . ." and the

conduct must "actually alter[] the conditions of the victim's employment . . . ." Id. at 21-22.

Therefore, "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile

or abusive, there is no need for it also to be psychologically injurious.'" Id. at 22.  To determine

"[w]hether an environment is 'hostile' or 'abusive' [one must] look[] at all the circumstances, which

may include the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." Id. at 17.  Therefore, while "[t]he effect on the employee's

psychological well-being is relevant in determining whether the plaintiff actually found the

environment abusive[,] . . . like any other relevant factor, [it] may be taken into account, [but] no

single factor is required." Id.  Title VII's constructive discharge provision targets "harassment so

intolerable as to cause a resignation . . . effected through co-worker conduct, unofficial supervisory conduct, or official company acts." Pennsylvania State Police v. Suders, 542 U.S. 129, 131 (2004).

While a few isolated racial slurs may not create a hostile work environment for Title VII purposes, see Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997), the repeated use of certain clearly offensive and abusive language can create a hostile work environment. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). Further, "[t]he offensiveness of the individual actions complained of is also a factor to be considered in determining whether such actions are pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989).

In this case, Plaintiff alleges a series of incidents over the course of a four-year period that he claims created a hostile work environment. Plaintiff emphasizes the frequent use of racial slurs during his employment and also alleges that the racist language was – at least on occasion – accompanied by threats of physical violence. See, e.g., Compl. ¶¶ 7 (alleging that Defendant Gannon would regularly refer to Plaintiff as "Nigger, Coon, [or] Porch Monkey"), 9 (claiming that during an official meeting, at which both Defendants William Gizzi and William Gizzi, Jr. were present, a commercial salesman described Plaintiff's wiring as "Nigger rigging," and Plaintiff was laughed at and taunted by those in attendance), 18 (claiming that Defendant Gannon stated that "the only good Niggers were dead Niggers"), 19 (alleging that Defendant Gannon threatened Plaintiff, saying that he was going to "[b]ash [Plaintiff's] face in"). Based on the severity and frequency of the incidents alleged, the Court concludes that amending the Complaint to add a Title VII hostile workplace claim based on these allegations would not be futile.

Given the frequency of the conduct, and entirety of the circumstances, the Court cannot find that a reasonable person would not have found that Defendants' conduct created a hostile or abusive

environment.  The message relayed through all of the harassment appears to this Court to be

unambiguously demeaning, and sufficient for the Court to conclude that a reasonable person would

have found that Defendants' conduct contributed materially to the creation of a hostile work

environment.  Cf. McKay v. Principi, No. 03 Civ. 1605, 2004 WL 2480455 (S.D.N.Y. Nov. 4,

2004) (collecting cases stressing the harmful effects of the use of the word "nigger" in the

workplace).

In satisfaction of the subjective prong, it appears that Plaintiff actually perceived the

environment to be abusive and whether that conduct actually altered the conditions of his

employment.  Plaintiff alleges that he regularly informed Defendant Gizzi, Jr. of what was said or

done after most of the incidents set out in the Complaint, that he felt threatened, and that it was

directly affecting his ability to perform his job.  See Compl. ¶¶ 8, 18-19, 21, 23-25.  In addition,

Plaintiff ultimately quit his job, because of the "intolerable conditions" created as a result of the

harassment.  Id. ¶ 25.  These facts appear to demonstrate that Plaintiff perceived the environment to

be abusive and that the conditions of his employment were actually altered.

Further, Plaintiff's proposed amended Complaint appears to (1) state that Plaintiff is of

African American descent; (2) describe in detail Defendants' actions; and (3) allege that Plaintiff

was singled out solely because of his race.  See Compl. ¶ 27 (explaining that Plaintiff was the only

African American employed by Tri-Valley).  Such pleadings hardly appear futile.  See, e.g., DiPetto,

383 F. App'x at *1 (stating that claims can be "sufficiently pled when the complaint stated simply

that the plaintiffs "[were] African-Americans, describe[d] defendants' actions in detail, and

allege[d] that defendants selected [plaintiffs] for maltreatment 'solely because of their color.'")

(quoting Phillip, 316 F.3d at 298); Boykin, 521 F.3d at 215 (2d Cir. 2008) ("[I]t is sufficient that

Boykin's complaint states that she 'is an African American female,' describes KeyBank's actions with respect to her loan application and alleges that she 'was treated differently from similarly situated loan applicants . . . because of her race, sex, and the location of the property in a predominantly African-American neighborhood.'").

For the foregoing reasons, the Court concludes that an amendment of Plaintiff's Complaint to add Title VII hostile workplace claims against Tri-Valley would not be futile because it appears that Plaintiff could state a colorable claim.

b.  Constructive Discharge

"To establish 'constructive discharge,' a plaintiff alleging . . . harassment must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." Suders, 542 U.S. at 130.  Additionally, it is well settled that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 745 (1998).

Plaintiff asserts that he was constructively discharged by Tri-Valley. See Compl.; see also Dkt. No. 27 ¶ 11.  As discussed in the context of the hostile work environment claim, Plaintiff has alleged that he was subjected to extensive racially-motivated harassment and that his employers were unresponsive to his repeated complaints.  Cf. Ellerth, 524 U.S. at 745 (identifying an affirmative defense for employers when "the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.").  As a result, the Court cannot conclude at this stage in the litigation that a claim

by Plaintiff alleging constructive discharge would be futile.

### c. Retaliation

In order to sustain a prima facie case of retaliation under 42 U.S.C. § 1981, "a plaintiff must show by a preponderance of the evidence i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995).

Based on the facts alleged, it is at least arguable that Plaintiff engaged in a protected activity when he complained to his supervisor, Defendant Gizzi, Jr., about racially charged harassment that he was subjected to by Tri-Valley employees. See, e.g., Gorzynski v. JetBlue Airways Corp., 596 F.3d 93 (2d Cir. 2010) (finding that a plaintiff had pleaded a *prima facie* case of retaliation where the protected activity in question consisted of complaints to a supervisor); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 169 n.1 (2d Cir. 2001) (referring to an internal complaint as protected activity for the purposes of a retaliation claim).

Further, Plaintiff alleges that in response to his persistent complaints, Defendant Gizzi, Jr. reduced Plaintiff's work hours, and did not pay him for proper hours of services rendered, significantly disadvantaging Plaintiff and preventing him from working wage jobs where his skill and expertise were needed. See Compl. ¶ 18. Plaintiff alleges that Defendant Gizzi, Jr. and Defendant Gannon were "good friend[s]," and that Plaintiff was punished for reporting these incidents to Defendant Gizzi, Jr., the company's Vice President. See id.

Finally, Plaintiff has alleged "temporal proximity" between the protected activity and the reduction in his hours and wages, and that Plaintiff was the only African American worker at Tri-

Valley and "the only one that had [to] deal with this kind of abuse."  Compl. ¶ 27; see also Espinal

v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that

suggests retaliation by showing that protected activity was close in time to the adverse action.").

Therefore, based on the facts alleged, the Court cannot conclude that amendment to state a

claim for retaliation would be futile.

### d.  Equal Employment Opportunity Commission Statute of Limitations

Under Title VII and the NYSHRL, a 300-day statute of limitations applies in a "case of an

unlawful employment practice with respect to which the person aggrieved has initially instituted

proceedings with a State or local agency with authority to grant or seek relief from such practice . . .

after the alleged unlawful practice occurred."  42 U.S.C.A. § 2000e-5(e)(1).  When an employee is

fired "pursuant to a continuous practice and policy of discrimination, the commencement of the

statute of limitations period may be delayed until the last discriminatory act in furtherance of it,

provided such a continuing violation is clearly asserted both in the EEOC filing and in the

complaint."  Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25 (2d Cir. 1985).  However, "[t]he 300-

day period, in the case of a discriminatory discharge, starts running on the date when the employee

receives a definite notice of the termination, not upon his discharge."  Id. at 23.  In order to bring a

Title VII discrimination case in federal court, the claim must first be properly raised within the

statutory limitations period for filing a claim with the EEOC.  Id.

On or around September 21, 2009, Plaintiff filed a charge of racial discrimination with the

EEOC.  Compl. ¶ 27.  Therefore, to be timely filed, at least one of the discriminatory acts

underlying Plaintiff's claims must have occurred no earlier than August 18, 2008.  Plaintiff alleges

that on September 18, 2009 Defendant Gannon made a "picture of [P]resident Obama with a penis

in his mouth and hung it on the job box to anger [him]," and that Plaintiff informed Defendant

Gizzi, Jr. of this event.  Compl. ¶ 24.  On or around September 18, 2009, Plaintiff alleges that he

was constructively discharged from his employment with Tri-Valley due to the intolerable working

conditions created by Tri-Valley.  These incidents occurred well within the 300-day statutory

limitations period.

Further, as discussed in Part IV.B *supra*, the addition of Tri-Valley as a defendant should not

alter this statute of limitations analysis.  See Advanced Magnetics, 106 F.3d at 19 (2d Cir. 1997).

Therefore, the Court cannot conclude that amendment would be futile because claims would be

barred by the relevant statute of limitations.

Finally, to the extent that individual Defendants have objected to claims against them based

on lack of conformity with EEOC procedure, such arguments are moot, as all individual Defendants

are dismissed from this case.

V.     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant Gannon's Motion to dismiss (Dkt. No. 8) is granted and all

claims against him are dismissed with prejudice; and it is further

**ORDERED**, that Defendants Gizzi and Gizzi, Jr.'s Motion to dismiss (Dkt. No. 7) is

**GRANTED in part** and **DENIED in part** consistent with this order; and it is further

**ORDERED**, that Plaintiff's Motion to amend his Complaint (Dkt. No. 18) is **GRANTED**;

and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action against Defendant Tri-

Valley, he must file an amended complaint as directed above **within thirty (30) days** from the date

of filing of this Decision and Order; and it is further

      **ORDERED**, that the Clerk serve a copy of this Order on all parties.

      **IT IS SO ORDERED**.


DATED:     June 11, 2012
            Albany, New York


            Lawrence E. Kahn
            U.S. District Judge